## TOMS v. FLACK.

(December 22, 1900.)

*Husband and Wife—Separate Property of Wife—Possession by Husband—Evidence.*

Evidence in this case held sufficient to warrant the instruction that if the jury believed the evidence, the plaintiff was the owner of the notes and mortgages in controversy.

CIVIL ACTION by Mrs. M. C. Toms against J. F. Flack, administrator of J. M. Toms, and M. L. Bridgers and Dora Bridgers, heard by Judge *Thos. J. Shaw* and a jury, at Fall Term, 1900, of RUTHERFORD Superior Court. From judgment for plaintiff, the defendant appealed.

*George P. Martin,* for the plaintiff.
*R. S. Eaves,* for the defendants.

FURCHES, J.   The plaintiff is the widow of J. M. Toms, who died after the 22d of October, 1897, and before the institution of this action; and the defendant J. F. Flack is his administrator.   The plaintiff was the owner of a tract of land, a part of which was willed to her by her father, and a part of which she bought, and the deed was made to her. The plaintiff and J. M. Toms were married about 14 years ago.   The plaintiff alleges that she sold said land to M. L. Bridgers and wife, Dora Bridgers, which trade was consummated on the 22d of October, 1897; that the price of the land agreed to be paid by Bridgers was $1,000, $700 of which was paid to her at the time of executing the deed to Bridgers, and three notes given for the remainder of the price; that it was distinctly understood by her and her husband and by Bridgers, the purchaser, that she was to receive the purchase-money for said land; that $700 was to be paid "down," and that Bridgers was to give her three notes, of $100 each,

TOMS v. FLACK.

secured by mortgage on said land; that through the mistake
or inadvertence of Mr. Carpenter, who was procured to do
the writing—drawing deed, mortgage, and notes—the notes
and mortgage were made payable to her husband; that the
notes are now in the hands of the defendant Flack, admin-
istrator of her husband's estate, who refuses to surrender
them to her, and claims them as a part of her husband's
estate.   This action is to recover said notes and to correct the
same.   The defendant denies these allegations of plaintiff,
and claims the notes as administrator.   Mrs. Toms, the plain-
tiff, testified:   "I know the property sold M. L. Bridgers.
I sold him a part of the Whitehouse land, willed to me by my
father, and the part I bought from J. B. Carpenter.   He was
to pay me $1,000.   He paid $700.   Three hundred dollars
is still due, secured by mortgage.   I made him a deed, and
took a mortgage to secure balance of purchase-money. . Ques-
tion.   How were these notes to be made payable?   Answer.
To myself.   That was the arrangement between Mr.
Bridgers and myself.   He knew it was my land.   We had
talked about it three or four times.   Mr. Toms was present
when the agreement was made between Mr. Bridgers and
myself."   J. B. Carpenter was examined as a witness, and
testified:   That he drew the papers—the deed, mortgage,
and notes.   That Mr. Toms was not present.   Does not
know how he came to draw the notes to Mr. Toms.   Knew
the land belonged to Mrs. Toms.   Do not think she told him
to draw them to Mr. Toms.   That he is a creditor of Tom's
estate.   M. L. Bridgers testified:   That he bought the land
from the plaintiff for $1,000.   "She agreed to sell it with the
understanding that all the money was to go on a mortgage
on her separate property.   This was the understanding at the
time of the trade.   I don't know to whom the notes were
made payable.   I did not know they were payable to Mr.
Toms till after his death.   When I went to pay the notes, I

went first to her, and found out that Mr. Flack had them. There was nothing said about whom the notes were to be made payable to." The defendant introduced no evidence, but moved to dismiss plaintiff's action under Acts 1897, chap. 109, as of nonsuit. This the Court refused to do, and the defendant excepted. But the Court charged the jury, if they believed the evidence, they should find the issue, which is as follows: "Is the plaintiff the owner of the notes and mortgage, as alleged in the complaint?" "Yes." To this charge the defendant again excepted.

There were exceptions taken on the trial to some of the evidence, but all exceptions to the competency of evidence were withdrawn by defendant's printed brief; and the case was put solely on the lack of sufficient evidence to warrant the charge of the Court, and this is the question we have to consider. The defendant, in his brief, argues the case as if it was an action to correct a written instrument, and insists that the rule in such cases is that the evidence shall be strong and convincing; that it must be more than a mere preponderance of the evidence in favor of the plaintiff. And if it was an action for the correction of a deed or other instrument of writing, and nothing more, the defendant has correctly stated the rule as to the weight of evidence. But here is where the defendant has fallen into error. This may be for the reason that the complaint contains a paragraph for the correction of the notes, as well as for possession. But the issue was tried upon the ground of the ownership of the notes, and this was the only issue submitted to the jury. Therefore the rule contended for by the defendant is not applicable to this case, and it depended on the weight or the preponderance of the testimony. In deciding this case, it is necessary for us to consider, to some extent, the changed relations of husband and wife as to their property before and since the Constitution of 1868. Before the Constitution of 1868, the husband,

by virtue of his marital rights, became the absolute owner of his wife's personal property; and, if she sold her land and converted it into money or other personal effects, this became the husband's, unless there was a contract or agreement between them that it should not, as in *Lyon v. Aikin,* 78 N. C., 259. But by the Constitution of 1868 (Art. X, sec. 6),the wife's personal property, as well as her real property, is and remains hers, the same as if she were unmarried. Therefore the simple possession of the wife's personal property by the husband does not give him a title to it, as it did before 1868. Of course, the wife can give it to her husband. But the presumption is that it is still hers, though he may be in possession of it. And, to meet this presumption, there must be evidence to rebut the presumption, and to show that the husband has acquired title from the wife by gift or otherwise. The debt from Bridgers was a part of the price for land belonging to the plaintiff, and it belonged to her. The notes were not the debt, but only evidence of the debt. And, as the debt was the plaintiff's, the notes were hers, unless the husband acquired them from her; and this burden was on the defendant. After the plaintiff had established the fact that the land, the consideration of the notes, was hers, the debt was hers, and the notes are hers, unless the husband acquired title to them from her. And, after she had proved that the land was hers, the trade was made by her for the sale of the land to Bridgers, with the understanding between him and the plaintiff, in the presence and by the consent of the husband, as she swears it was (and all objection to this evidence is withdrawn), and there being no evidence in conflict with this evidence, we can not see why the Court should not have charged the jury that, if they believed the evidence, they should find the issue, "Yes." We see no error, and the judgment is

Affirmed.